**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>John Riggieri</u>

     v.                         Civil No. 16-cv-20-LM
                                      Opinion No. 2016 DNH 128
<u>Caliber Home Loans, Inc. et al.</u>


### O R D E R

In a case that was removed from the New Hampshire Superior Court, Cheshire County, John Riggieri brings suit against Caliber Home Loans, Inc. ("Caliber"), Ocwen Loan Servicing, LLC ("Ocwen"), and U.S. Bank Trust, N.A. ("U.S. Bank"), alleging that defendants made misrepresentations in connection with a proposed loan modification offer. Riggieri also alleges that defendants generally acted in bad faith, and that their conduct resulted in a foreclosure auction at which his home was sold below market value.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that the complaint fails to state a claim. Riggieri objects. For the reasons that follow, defendants' motions to dismiss are granted.


### Standard of Review

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable

inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## Background[1]

In 2002, John Riggieri purchased a plot of land in Marlborough, New Hampshire (the "property").  On November 30, 2006, Riggieri and his then-wife, Nancy Gaunya, executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $604,000 to finance the construction of a home on the property (the "note").  See doc. no. 21-2.  That same day, Riggieri and Gaunya granted a mortgage on the property to Countrywide to secure the loan, with Mortgage

---

[1] The facts are summarized from the Riggieri's amended complaint (doc. no. 17) and a copy of Riggieri's promissory notes, mortgage, and foreclosure deed, which were attached as exhibits to various filings in this case.  See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (noting that a court may consider documents sufficiently referred to in the complaint on a motion to dismiss without converting the motion to one for summary judgment).

Electronic Registration Systems, Inc. ("MERS") as the mortgagee in its capacity as nominee for Countrywide.  <u>See</u> doc. no. 21-3. Both the note and the mortgage list the address of the property as "38 Shaker Farm Road, Marlborough, New Hampshire 03455."  At some point prior to November 23, 2015, the mortgage was assigned to U.S. Bank.[2]

On June 9, 2009, Riggieri, Gaunya, and Countrywide entered into a "Modification of Note and Security Instrument," which amended certain of the note's terms (the "modified note").  <u>See</u> doc. no. 21-4.  The modified note also lists the property's address as "38 Shaker Farm Road, Marlborough, New Hampshire 03455."

Riggieri alleges that in September 2009 "there was a discrepancy in [his] escrow account."  Doc. no. 17 at ¶ 18.  As a result of the discrepancy, Harmon Law Offices began foreclosure proceedings on the property in November 2011. Riggieri alleges that he entered into a loan modification agreement and the foreclosure did not occur.

---

[2] The foreclosure deed states that U.S. Bank held the mortgage as of the date of the foreclosure.  Caliber and U.S. Bank represent in their motion to dismiss that MERS assigned the mortgage to BAC Home Loans Servicing, LP, which assigned the mortgage to U.S. Bank in August 2015.  Because Riggieri does not dispute that U.S. Bank validly held the mortgage at the time of the foreclosure, the exact record of assignment of the mortgage is immaterial to the court's analysis.

In August 2012, Bank of America, which had been the loan servicer, transferred servicing responsibilities to Ocwen.  On September 14, 2012, Ocwen mailed Gaunya a letter, noting that she was approved to enter a new modification program which would reduce her principal balance and monthly mortgage payment (the "Ocwen letter").[3]  The letter informed Gaunya that if she completed a trial period, she would reduce her monthly payment from $4,400.26 per month to $1,510.16 per month, reduce her total loan balance from $722,277.17 to $173,047.68, and reduce her interest rate from 5.375% to 2%.  The letter also informed Gaunya that she could accept the offer by making her first trial period plan payment by October 1, 2012.  The letter was addressed to Gaunya at "38 Shaker Farm Road S, Marlborough, NH 03455."[4]

Riggieri alleges that he did not become aware of the Ocwen letter until early 2013, well after the deadline for acceptance.[5] Riggieri alleges that the letter was "unbelievable" and that, once he became aware of it, he "assumed that it was junk mail or

---

[3] Riggieri alleges that "Ocwen was forced in a settlement with the Department of Justice to write down [the] loan" significantly.  Doc. no. 17 at ¶ 22.

[4] It is unclear why the letter was addressed to Gaunya only.

[5] Riggieri does not allege when Gaunya received the letter or why he did not become aware of the letter until early 2013.

not a legitimate offer, and did not act upon it." Doc. no. 17
at ¶¶ 29-30.

In February 2014, Ocwen began foreclosure proceedings on
the property. Riggieri alleges that the foreclosure proceedings
ended after he requested that Ocwen produce the original
promissory note, and it could not.

In June 2015, Ocwen transferred servicing responsibilities
on the loan to Caliber. Upon receiving notice of the transfer,
Riggieri requested that Caliber honor the offer made in the
Ocwen letter. Caliber refused to adjust the loan amount or
Riggieri's interest rate. Shortly thereafter, Caliber mailed a
notice of foreclosure to Riggieri and published a notice of
foreclosure in the *Manchester Union Leader*. Riggieri alleges
that at the time the foreclosure notice was mailed, he was
traveling on a 27-day trip. Riggieri alleges that he had the
post office put his mail on hold while he was traveling, from
October 29 through November 23, 2015 and, therefore, did not
receive notice of the foreclosure sale, which took place on the
day he returned from the trip.[6]

---

[6] In accordance with RSA 479:26, U.S. Bank's attorney
included with the foreclosure deed an affidavit setting forth
the circumstances to show that the power of sale was duly
executed. See doc. no. 32-3 at 3-4. In the affidavit, U.S.
Bank's counsel provides that a copy of the notice of foreclosure
was sent to Gaunya and Riggieri by certified mail on October 23,
2015. Therefore, Riggieri should have received the foreclosure
notice prior to his 27-day trip. For purposes of this order,

Both the mailed notice and the notice published in the *Manchester Union Leader* listed the property's address as "38 Shaker Farm Road, Marlborough, NH 03455," the same address that is listed in the mortgage, the note, and the modified note. Riggieri alleges that the property's actual address is "38 Shaker Farm Road South, Marlborough, NH 03455," which was the address listed in the Ocwen letter. Riggieri also alleges that the auctioneer at the foreclosure sale "admitted that all parties were unable to find the property initially," which Riggieri believes was caused by the incorrect address being listed in the notice. Doc. no. 17 at ¶ 48.

U.S. Bank, which held the mortgage at the time of the foreclosure, purchased the property at the foreclosure sale. According to the foreclosure deed, U.S. Bank purchased the property for $379,677.01. See doc. no. 32-3 at 1. The foreclosure deed lists the property's address as "38 Shaker Farm Road, Marlborough, NH 03455." Id. Riggieri alleges that at the time he filed this lawsuit, shortly after the foreclosure sale, he was 2300 days, more than six years, late on his mortgage payments.

Riggieri filed this lawsuit in state court on December 21, 2015. Defendants removed the case to this court on January 20,

---

the court assumes that the foreclosure notice arrived sometime after October 29, and was held by the post office.

2016, and moved to dismiss the complaint.  Riggieri subsequently
amended the complaint, and defendants move to dismiss the
amended complaint.  Riggieri objects.

## Discussion

Riggieri asserts five claims: (i) negligent misrepresenta-
tion; (ii) breach of the covenant of good faith and fair
dealing; (iii) unjust enrichment; (iv) negligent infliction of
emotional distress; and (v) "standing."  Riggieri does not
specify against which defendant he brings each claim, although
he appears to allege that Caliber and U.S. Bank should be held
liable for any of Ocwen's unlawful activity because they are
"successors in interest" to Ocwen.  Defendants move to dismiss
all claims.[7]

## I.  Negligent Misrepresentation

Riggieri alleges that Ocwen is liable for negligent
misrepresentation because the Ocwen letter was "unbelievable"
and offered "an extremely short timeline for acceptance."  Doc.
no. 17 at ¶ 60.  Riggieri alleges that Caliber is liable for
negligent misrepresentation because it "negligently failed to
properly describe the property in the notice of foreclosure."
Id. at ¶ 67.  Riggieri also alleges that "Defendants have added

---

[7] Caliber and U.S. Bank filed a motion to dismiss (doc. no.
20).  Ocwen filed a separate motion to dismiss (doc. no. 21).

erroneous costs and fees to the Plaintiff's loan . . . leading him down the path to foreclosure." Id. at ¶¶ 74-75.  Defendants contend that Riggieri does not allege any misrepresentation and, to the extent he does, his claim is barred by the economic loss doctrine.

Under New Hampshire common law, the elements of a claim for negligent misrepresentation "are a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011) (citing Snierson v. Scruton, 145 N.H. 73, 78 (2000)).  Moreover, "[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them."[8]  Id.

A.  Ocwen Letter

Riggieri's complaint does not allege facts sufficient to support a claim for negligent misrepresentation based on the Ocwen letter.  Other than vague and conclusory allegations that

---

[8] Riggieri devotes one section in each of his objections to defendants' motions to dismiss to arguing that his claim for negligence was sufficiently alleged.  Although Riggieri alleged a claim for negligence in his original complaint, he does not allege a claim for negligence in his amended complaint, and defendants did not address a claim for negligence in their motions to dismiss.  Therefore, there is no negligence claim in the case.

the letter was "misleading" or "worded . . . to avoid responses from consumers," doc. no. 17 at ¶¶ 62-63, Riggieri does not allege any facts to show a misrepresentation in the letter.  To the contrary, Riggieri appears to allege that the offer contained in the letter was legitimate, because Ocwen was forced to offer a reduction on the loan as a result of its settlement with the Department of Justice.

Even if Riggieri had alleged a misrepresentation based on wording in the letter, the complaint fails to allege any justifiable reliance on such a representation.  Indeed, Riggieri alleges that he did not discover the letter until several months after the deadline for responding had passed.[9]  He has not alleged any facts to support a plausible theory that he relied to his detriment on an alleged misrepresentation in that letter.

---

[9] Riggieri's original complaint alleged that he received the letter shortly after it was mailed.  Ocwen asserts that Riggieri's contradictory allegation in his amended complaint that he did not receive the letter until 2013 is an attempt to avoid dismissal based on the statute of limitations, an argument Ocwen pressed in its motion to dismiss the original complaint. Ocwen urges the court to disregard the allegation in the amended complaint that Riggieri did not become aware of the letter until 2013 on that basis.  The court declines to do so.  See, e.g., Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens, No. 13-cv-965(MKB), 2014 WL 808013, at *5 (E.D.N.Y. Feb. 28, 2014) ("While there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading . . . the more usual and benevolent option is to accept the superseded pleadings . . . ." (internal quotation marks and citation omitted)).

In addition, even if Riggieri's allegations were sufficient to support a negligent misrepresentation claim, the claim would nonetheless be barred by the economic loss doctrine.  Under New Hampshire law, the contractual relationship between a lender and borrower typically precludes recovery in tort.  Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (citing Wyle, 162 N.H. at 409-10).  This principle, known as the "economic loss doctrine," operates on the theory that "[i]f a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain." Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007).  Thus, where a borrower claims the existence of a duty outside the contractual relationship, he has the burden of proving that the lender voluntarily engaged in "activities beyond those traditionally associated with the normal role of a money lender." Moore, 848 F. Supp. 2d at 133 (quoting Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989)).  "This burden extends to claims against mortgagees as well as loan servicers." Bowser v. MTGLQ Inv'rs, LP, No. 15-cv-154-LM, 2015 WL 4771337, at *2 (D.N.H. Aug. 11, 2015) (citing cases).

"There is no question that New Hampshire recognizes an exception to the economic loss doctrine for certain negligent

misrepresentation claims." Schaefer v. IndyMac Mortg. Servs., 731 F.3d 98, 108 (1st Cir. 2013). A narrow exception exists for professionals "who are in the business of supplying information," such as accountants, appraisers, and investment brokers. Id. (discussing Plourde, 154 N.H. at 759).[10]

The facts alleged in the complaint show that the economic loss doctrine applies to Riggieri's negligent misrepresentation claim based on the Ocwen letter. Riggieri does not allege that Ocwen voluntarily engaged in activities beyond those traditionally associated with the normal role of a money lender. See Moore, 848 F. Supp. 2d at 133. The Ocwen letter contains an offer from a loan servicer on behalf of a lender to modify the terms of the loan. Tort claims based on misrepresentations made in connection with a loan modification offer are barred by the economic loss doctrine because they "are related to defendants' attempts to collect the [borrower's] mortgage debt." Dionne v.

---

[10] The New Hampshire Supreme Court has also recognized an exception in a case where a homeowner made misrepresentations in an effort to sell his home. See Schaefer, 731 F.3d at 108 (discussing Wyle, 162 N.H. at 409-10). In the latter instance, the New Hampshire Supreme Court was careful to limit the exception only to those misrepresentations made prior to the formation of the contract and in an effort to induce a person to enter into the contract. See id. Riggieri does not assert that this exception applies to his claim.

Fed. Nat'l Mortg. Assoc., No. 15-cv-56-LM, 2016 WL 3264344, at *13 (D.N.H. June 14, 2016); see also Schaefer, 731 F.3d at 107.[11]

Although Riggieri asserts that Ocwen is in "the business of supplying information"[12] and, therefore, an exception to the economic loss doctrine exists, he alleges no facts to support such a claim.  The First Circuit has made clear that negligent misrepresentation claims such as Riggieri's which are asserted against loan services are plainly barred by the economic loss doctrine, and do not fall within that exception.  See Schaefer, 731 F.3d at 108-09 (holding that the district court correctly held that plaintiff's negligent misrepresentation claim against a loan servicer arising out of an alleged misrepresentation in a loan modification offer letter was barred by the economic loss doctrine); see also Bowser, 2015 WL 4771337, at *2 (applying

_____

[11] Riggieri argues briefly that the case law regarding the applicability of the economic loss doctrine to claims arising out of misrepresentations in a loan modification offer does not apply because Ocwen was forced to offer the loan modification due to a settlement with the Department of Justice.  Riggieri does not explain why that fact, even if true, changes the application of the economic loss doctrine to his claim.

[12] Although Riggieri filed separate objections to the two motions to dismiss, he generally refers to "the defendants" throughout both objections.  While Riggieri more specifically addressed his argument concerning the exception for defendants who are in the business of supplying information in his objection to Caliber and U.S. Bank's objection, the court interprets Riggieri's argument on that point to pertain to Ocwen as well.

economic loss doctrine to bar negligence claim against loan servicer).

Therefore, even if Riggieri had plausibly alleged a claim for negligent misrepresentation based on the Ocwen letter, which he has not, the economic loss doctrine bars that claim.

B.    Other Misrepresentations

Riggieri alleges that Caliber misrepresented the property's address in the notice of foreclosure, and that it improperly added fees and costs to Riggieri's loan. Neither allegation is sufficient to plead a claim for negligent misrepresentation.

Even assuming the truth of the allegation that Caliber misrepresented the property's address on the notice of foreclosure,[13] that act does not give rise to a claim for negligent misrepresentation on Riggieri's behalf. An essential element of a claim for negligent representation is justifiable reliance by the plaintiff. Riggieri alleges that he did not receive notice of the foreclosure until after the sale occurred. He does not allege that he relied on the allegedly mistaken address in the notice of foreclosure in any way. Therefore, he cannot base a claim for negligent misrepresentation on the

---

[13] As mentioned above, the address listed in the notice of foreclosure matched the address listed in the mortgage, the note, the modified note, and the foreclosure deed.

allegedly inaccurate address contained in the notice of foreclosure.

Riggieri's allegation concerning added fees is also insufficient to survive a motion to dismiss.  Riggieri does not explain how the late fees could be considered a misrepresentation.  Moreover, Riggieri alleges that he "was behind on his mortgage payments for 2300 days."  Doc. no. 17 at ¶ 95.  Pursuant to the terms of the mortgage, the lender was entitled to charge Riggieri additional fees and costs.  See doc. no. 21-3 at ¶¶ 1, 14.  Further, Riggieri never paid any of the fees and costs and, therefore, he has not alleged that he suffered any injury from the misrepresentation.

Accordingly, Riggieri's claim for negligent misrepresentation is dismissed.

II.  Good Faith and Fair Dealing

Riggieri alleges that Ocwen violated the implied covenant of good faith and fair dealing in the mortgage agreement by sending him the allegedly misleading Ocwen letter.  Riggieri also alleges that "defendants" breached the implied covenant in various ways, including by (i) keeping Riggieri "uninformed and off track with his loan," (ii) "moving to foreclose without . . . proper notice," (iii) "auctioning the . . . Property for substantially less than the property is worth," (iv) "failing to

14

properly describe the property" in the foreclosure notices published in the *Manchester Union Leader*, (v) "add[ing] interest, late payments, and other fees" to Riggieri's loan, and (vi) accelerating Riggieri's loan and foreclosing on the property arbitrarily and without proper explanation.  Doc. no. 17 at ¶ 85; see id. at ¶ 97.  None of Riggieri's allegations is sufficient to state a plausible claim for relief for violation of the implied covenant of good faith and fair dealing.

Under New Hampshire law, the implied covenant of good faith and fair dealing applies in three different contractual contexts: contract formation, termination of at-will contracts, and discretion in contract performance.  Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989).  Riggieri invokes the third category that limits discretion in contractual performance.  "[W]hether a plaintiff has sufficiently alleged a breach of this duty turns in part on 'whether [an] agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement.'"  Todd v. Aggregate Indus. - Ne. Region, Inc., No. 14-cv-393-JL, 2015 WL 6473434, at *11 (D.N.H. Oct. 27, 2015) (quoting Rouleau v. U.S. Bank, N.A., No. 14-cv-568-JL, 2015 WL 1757104, at *3 (D.N.H. Apr. 17, 2015)).  Such "contractual discretion can be exercised in a way that violates the duty of good faith and fair dealing only if a promise is subject to such

15

a degree of discretion that its practical benefit could seemingly be withheld." Milford–Bennington R.R. Co., Inc. v. Pan Am Rys., Inc., No. 10-cv-264-PB, 2011 WL 6300923, at *4 (D.N.H. Dec. 16, 2011) (internal quotation marks, alterations, and citation omitted).

A.   Ocwen Letter

Riggieri argues that the Ocwen letter was misleading and that Ocwen failed to follow up with him after he did not respond in a timely manner, to ensure that he took advantage of the loan modification offer.  Riggieri contends that these actions constitute a breach of the implied covenant of good faith and fair dealing in the mortgage agreement.

As discussed above, Riggieri has not adequately alleged that the Ocwen letter was misleading in any way.  Regardless, "[c]ourts have generally concluded . . . that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan." Moore, 848 F. Supp. 2d at 130; see also Gikas v. JPMorgan Chase Bank, N.A., No. 11-cv-573-JL, 2013 WL 1457042, at *3-4 (D.N.H. Apr. 10, 2013); Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *3 (D.N.H. Nov. 19, 2012).  This is so because "[p]arties are bound by the agreements they enter into and the court will not use the implied covenant of good faith

and fair dealing to force a party to rewrite a contract so as to avoid a harsh or inequitable result." Ruivo, 2012 WL 5845452 at *4 (citing, among other cases, Moore, 848 F. Supp. 2d at 130; Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997)).

Therefore, to the extent Riggieri attempts to base his breach of the implied covenant of good faith and fair dealing claim on the Ocwen letter or Ocwen's failure to offer him a loan modification in general, that claim is dismissed.

B.   Keeping Riggieri "Off Track" on His Loan

Riggieri alleges that defendants kept him "uninformed and off track with his loan." Doc. no. 17 at ¶ 85(a). Riggieri does not explain how any defendant withheld information from him or got him "off track" with his loan. These bare allegations are insufficient to state a plausible breach of the implied covenant of good faith and fair dealing by any defendant.

C.   Lack of Notice to Riggieri

Riggieri alleges that defendants breached the implied covenant of good faith and fair dealing because he did not receive actual notice of the foreclosure prior to the sale. Riggieri alleges, however, that he did not receive notice prior to the foreclosure because he had taken a 27-day trip and asked

the post office to hold his mail during that time.[14]  In other words, even if defendants' failure to give Riggieri prior actual notice of the foreclosure could be a breach of the covenant, Riggieri's failure to receive the written notice was his own fault.

Further, Riggieri does not explain how his lack of receipt of prior notice of the foreclosure sale could give rise to a claim for breach of the implied covenant of good faith and fair dealing.  The mortgage states that the manner in which the lender must provide the borrower with notice of a foreclosure is "prescribed by Applicable Law."  Doc. no. 20-3 at ¶ 22.  New Hampshire law "requires that the foreclosing party send notice to the mortgagor's last known address by registered or certified mail at least twenty-five days before the sale."  Bradley v. Wells Fargo Bank, N.A., No. 12-cv-127-PB, 2014 WL 815333, at *3 (D.N.H. Mar. 3, 2014) on reconsideration in part, No. 12-cv-127-PB, 2014 WL 2106495 (D.N.H. May 20, 2014) (citing RSA § 479:25).  "It does not, however, require that the mortgagor receive actual notice."  Id.

_____

[14] Although not specifically alleged, the complaint implies that Riggieri was away on his trip when Caliber mailed the notice of foreclosure.  As mentioned above, the affidavit attached to the foreclosure deed states that the foreclosure notice was sent to Riggieri and Gaunya by certified mail on October 23, 2015, six days prior to Riggieri's trip.

Therefore, Riggieri's alleged lack of actual notice does not give rise to a claim for breach of the implied covenant of good faith and fair dealing.

D.   Auctioning Off the Property for Less than it is Worth

Riggieri alleges that the property was auctioned off "for substantially less than the property is worth." Doc. no. 17 at ¶ 85(c).  Although not specifically alleged in the complaint, the foreclosure deed, which was attached to another motion filed by Caliber and U.S. Bank, shows that U.S. Bank purchased the property for $379,677.01.  See doc. no. 32-3 at 1.

Riggieri offers no support for his theory that the implied covenant of good faith and fair dealing in a mortgage agreement requires a certain sale price at a foreclosure auction.  Outside of the mortgage agreement, a mortgagee has a common law duty to make a reasonable effort to obtain a fair price.[15]  Riggieri does not allege a claim based on violation of that duty.

---

[15] New Hampshire law imposes a duty on a mortgagee to "exert every reasonable effort to obtain a fair and reasonable price under the circumstances." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541 (1985) (internal quotation marks and citation omitted). This duty, however, is based on New Hampshire common law, which demands that "in the context of a foreclosure sale, the mortgagee owes the mortgagor a fiduciary duty of good faith and due diligence." Bascom Const., Inc. v. City Bank and Trust, 137 N.H. 472, 475 (1993) (citing Murphy, 126 N.H. at 541); see also People's United Bank v. Mountain Home Developers of Sunapee, LLC, 858 F. Supp. 2d 162, 167 (D.N.H. 2012).

In addition, Riggieri fails to provide factual allegations to support any claim that the sales price was too low.  His complaint, therefore, is insufficient to allege bad faith.  See People's United Bank, 858 F. Supp. 2d at 168-70 (noting that conclusory allegations of a property being auctioned off in a foreclosure sale at below value without alleging the proper value of a property are insufficient to show bad faith).

Therefore, the complaint does not state a claim for breach of the implied covenant of good faith and fair dealing based on the purchase price at the foreclosure sale.

### E.   Inaccurate Address in Foreclosure Notice

Riggieri alleges that Caliber inaccurately listed the property's address in the notice of foreclosure published in the *Manchester Union Leader*.[16]  He alleges that the published notice listed the property's address as "38 Shaker Farm Road," when the property's actual address is "38 Shaker Farm Road South." Riggieri asserts that the address in the published notice of foreclosure was inaccurate, which he alleges violates the

---

[16] Caliber asserts in its motion to dismiss that, as a loan servicer, it did not have a contract with Riggieri and, therefore, cannot be held liable for breach of the implied covenant of good faith and fair dealing in any agreement. However, it appears that Riggieri is attempting to impose liability upon U.S. Bank, which held the mortgage at the time of the foreclosure, through Caliber's actions as U.S. Bank's agent.

implied covenant of good faith and fair dealing in the
mortgage.[17]

Riggieri alleges that Caliber "negligently failed to
properly describe the property in the notice of foreclosure."
Doc. no. 17 at ¶ 67.  As discussed above, the duty of good faith
and fair dealing applies when a party unreasonably exercises
discretion granted to it in an agreement.  Riggieri does not
identify the portion of the mortgage agreement that confers
discretion upon the mortgagor with respect to properly
advertising or providing accurate notice of the foreclosure
sale.  See, e.g., Mudge v. Bank of America, N.A., No. 13-cv-421-
JD, 2013 WL 6095561, at *3 (D.N.H. Nov. 20, 2013) (collecting
cases dismissing good faith and fair dealing claims for failing
to identify grants of discretion in mortgage agreements that
were exercised unreasonably).  Therefore, Riggieri does not
allege a plausible claim for breach of the implied covenant of
good faith and fair dealing based on the address in the
foreclosure notice.[18]

---

[17] As discussed above, the published notice of foreclosure
uses the same address ("30 Shaker Farm Road") as that listed in
the mortgage, the note, the modified note, and the foreclosure
deed.

[18] Further, even if Riggieri had properly asserted a claim
based on the allegedly incorrect address in the notice of
foreclosure, he fails to allege any injury as a result of that
conduct.  Although Riggieri alleges that potential purchasers
and the auctioneer himself "initially" had some "confusion"

F.   <u>Fees</u>

Riggieri alleges that defendants have "continued to add interest, late payments, and other fees to [his] loan," doc. no. 17 at ¶ 85(e), in violation of the implied covenant of good faith and fair dealing.  The terms of the mortgage provide that failure of the borrowers to make their required monthly mortgage payments permits the lender to collect late fees and interest. Riggieri alleges that he was more than six years late on his mortgage payments, and does not allege that defendants added any fees prior to his default.  Therefore, based on the allegations in the complaint and the express terms of the mortgage agreement, defendants were entitled to charge Riggieri fees and interest after he was in default.

Accordingly, Riggieri's allegations based on fees and interest are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing in the mortgage agreement.

G.   <u>Foreclosing Without Proper Explanation</u>

Riggieri alleges that defendants breached the implied covenant of good faith and fair dealing "[b]y failing to

---

about the location of the property, he does not allege that potential purchasers failed to attend the auction based on the allegedly incorrect address.

accelerate or start foreclosure proceedings for such an extended period . . . ."  Doc. no. 17 at ¶ 97.  Riggieri admits he was in default for more than six years and lays blame on defendants for waiting so long to foreclose.  Nothing in the terms of the mortgage requires the mortgagee to foreclose immediately upon the mortgagor's default.  Moreover, it is difficult to see how the mortgagee's forbearance in exercise of its right to foreclose in this case could constitute a breach of the duty of good faith and fair dealing.  See Brown v. Wells Fargo Home Mortg., No. 15-cv-467-JL, 2016 WL 3440591, at *6 (D.N.H. June 20, 2016); see also Rouleau, 2015 WL 1757104, at *5 ("a party does not breach the duty of good faith and fair dealing simply by invoking a specific, limited right that is expressly granted by an enforceable contract" (internal quotation marks and citation omitted)); Moore, 848 F. Supp. 2d at 129 ("the mere fact that some or all of the defendants exercised their contractual right to foreclose on the Moores after they defaulted on their mortgage payments does not amount to a breach of the implied covenant") (citations omitted).  And Riggieri has not alleged any facts to support such a claim.  Therefore, Riggieri's claim for breach of the implied covenant of good faith and fair dealing based on defendants' delay in foreclosing is dismissed.

In sum, none of Riggieri's allegations is sufficient to state a plausible claim for relief against any defendant for breach of the implied covenant of good faith and fair dealing in the mortgage agreement.  Accordingly, Riggieri's claim based on the implied covenant is dismissed.

III. <u>Unjust Enrichment</u>

Riggieri alleges that U.S. Bank "has been unjustly enriched by [the] reduced purchase price as they purchased a home for way less than the home is worth" after providing improper notice of the foreclosure.  Doc. no. 17 at ¶ 104.

"The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity."  Cohen v. Frank Developers, Inc., 118 N.H. 512, 518 (1978) (internal quotation marks and citation omitted); see also Pella Windows & Doors, Inc. v. Faraci, 133 N.H. 585, 586 (1990).  To be entitled to restitution for unjust enrichment, a plaintiff must show that the defendant received "a benefit which would be <u>unconscionable</u> for him to retain."  Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009) (internal quotation marks omitted); see also R. Zoppo Co., Inc. v. City of Manchester, 122 N.H. 1109, 1113 (1982).  In addition, unjust enrichment is an equitable remedy that is not available if the

parties' relationship is controlled by a contract.  Turner v. Shared Towers VA, LLC, 167 N.H. 196, 202 (2014).

In the context of a foreclosure sale, a claim for unjust enrichment may be viable, despite the mortgage agreement, if the defendant obtained title to the property based on impropriety or misconduct in the foreclosure proceeding.  See, e.g., Coleman v. Financial, No. 16-cv-11124, 2016 WL 3522556, at *5 (E.D. Mich. June 24, 2016).  As is explained above, to the extent Riggieri contends that the address on the foreclosure notice and his own failure to pick up his mail would constitute misconduct that invalidates U.S. Bank's title to the property, he has not alleged sufficient facts to support those theories.  In the absence of malfeasance, the mortgage agreement precludes an unjust enrichment claim.  See Smith v. Litton Loan Servicing, 517 F. App'x 395, 398 (6th Cir. 2013) (a lender's invocation of its "foreclosure remedy when a borrower stops making payments on a loan secured by a mortgage . . . can produce lamentable situations, but these situations are anticipated by mortgage agreements and are not the sort of inequity that unjust enrichment is meant to address").

In addition, even if the claim were not precluded by the mortgage agreement, to the extent Riggieri relies on the value of the property as a basis for unjust enrichment, he does not allege facts to show that U.S. Bank received an unconscionable

benefit.  Through the original loan, on November 30, 2006,
Riggieri and Gaunya received $604,000.  By September 2012, the
amount due on the loan was $609,000.  When the property was sold
at the foreclosure sale, Riggieri had not made mortgage payments
for more than six years.  The property was sold to U.S. Bank for
$379,677.01.

Riggieri does not allege that the sale price is less than
the fair market value of the property, much less that the fair
market value exceeds the amount due on the mortgage.  He also
does not allege that U.S. Bank is seeking to recover any
deficiency from him.  See, e.g., Restatement (Third) of Property
(Mortgages), § 8.4 (1997).  Further, he does not allege what, if
any, equity he held in the property.  The amount of the sale
price does not show that U.S. Bank obtained a benefit that would
be unconscionable to retain.[19]

IV.  Negligent Infliction of Emotional Distress

Riggieri alleges that "Defendants have made various
negligent misrepresentations to the Plaintiff," doc. no. 17 at

---

[19] "When opposing a Rule 12(b)(6) motion, a plaintiff cannot
expect a trial court to do his homework for him.  Rather, the
plaintiff has an affirmative responsibility to put his best foot
forward in an effort to present some legal theory that will
support his claim."  Carter's of New Bedford, Inc. v. Nike,
Inc., 790 F.3d 289, 292 n.2 (1st Cir. 2015) (internal citation
and quotation marks omitted).

¶ 109, which led to physical injuries, such as loss of appetite, upset stomach, sleeplessness, and severe mental anguish.

To make out a negligent infliction of emotional distress claim, the plaintiff must show: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (internal quotation marks and citation omitted); see also Mottram v. Wells Fargo Bank, N.A., No. 15-cv-470-PB, 2016 WL 917905, at *4 (D.N.H. Mar. 8, 2016). As discussed above, Riggieri has not alleged that any defendant made any misrepresentations, negligent or otherwise, to him. Therefore, he has not alleged a claim for negligent infliction of emotional distress based on a negligent misrepresentation.

V.    Standing

Riggieri alleges that the "Defendant" did not have standing to foreclose on the property because Ocwen could not produce the original note when Riggieri requested it. Although New Hampshire law does not recognize a cause of action of "standing," it appears that Riggieri is attempting to allege a claim for wrongful foreclosure based on the fact that Ocwen did

not produce the original note when he requested it, in 2014, long before the foreclosure sale in November 2015.[20]

U.S. Bank held the mortgage at the time of the foreclosure. Under the terms of the mortgage agreement, U.S. Bank had "the authority, as agent of the noteholder, to exercise the power of sale." Bergeron v. N.Y. Cmty. Bank, 168 N.H. 63, 71 (2015) (noting that if the language of the mortgage establishes an agency relationship between the assignee of MERS and the holder of the note, the assignee of MERS has the authority to foreclose regardless of whether that entity holds the note at the time of the foreclosure). Therefore, U.S. Bank was authorized to foreclose on the property regardless of whether it held the note.

Accordingly, defendants are entitled to dismissal of Riggieri's complaint.


### Conclusion

For the foregoing reasons, defendants' motions to dismiss (doc. nos. 20 and 21) are granted.

---

[20] Although Riggieri appears to base his claim on Ocwen's alleged inability to produce the original note in 2014, he does not appear to seek to hold Ocwen liable for his "standing" claim. See Gikas, 2013 WL 1457042, at *4-5 (plaintiff cannot hold previous loan servicer liable for any wrongful conduct by current servicer or note holder).

While the motions to dismiss were pending, Caliber and U.S. Bank filed a motion seeking a declaration that the inadvertent recording of the foreclosure deed is void, pending the outcome of this litigation (doc. no. 32).  In light of this order, which disposes of this litigation, the motion (doc. no. 32) is terminated as moot.

The clerk of court is directed to enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 3, 2016

cc:   Joseph A. Farside, Jr., Esq.
      Nathan Reed Fennessy, Esq.
      Keith A. Mathews, Esq.
      Thomas J. O'Neill, Esq.